McIlvaine, J.
This cause is presented upon the alternative writ, answer of defendants, and testimony.
This writ is prosecuted to compel the defendants to certify to the auditor of Yinton county the amount of tax necessary to redeem ten several bonds of like tenor and effect, for one hundred dollars each, payable one year after date, with six per cent, interest, and dated September 8, 1864.
It appears from the testimony, that in August, a.d. 1864, under a call for volunteers, by the President of the United States, the quota required from Wilkesville township was twenty-two, and in order to fill that quota, by inducing volunteers to give their credits to the township, David-Terry and William Brick, two trustees of the township, with Phillip Keck, clerk of the township, on the twenty-seventh day of said month, met at the township, but not at the usual place of holding the annual township meeting, and adopted dke following resolution, viz.:
“The trustees of Wilkesville township hereby obligate themselves to pay one hundred dollars bounty to each volunteer accepted by the government, to fill the quota of Wilkesville township, Yinton county, Ohio, under the last call of the President for soldiers.
“David Terry,
•“.Attest. “William Buck,
“Phillip Keck, T. Olh.” “ Trustees.”
*291 And caused record thereof to be duly made by the township clerk, and copies thereof to be posted up at five different places in the township.
On the 8th day of September following, at the township, but not at the usual place of holding the annual township meeting, said Terry and Brick executed twenty-two separate bonds of the following tenor:
“ $100. Wilkesville Township Bond. $100.
“ One year after date the township of Wilkesville, Yinton county, Ohio, will pay to bearer one hundred dollars for value received, with interest from date at six per cent.
“ (Signed), “ David Terry,
“ Philip Keok, “ Wm. Buck,
“ Tp. Clerk. “ Wilkesville Tp. Trustees.
“ September 8, 1864.”
Ten of these bonds were afterwards delivered to volunteers (one to each of ten volunteers), who were accepted by the government and credited upon the quota of the township under said call of the President of the United States.
Afterwards William C. Cline, relator, for a valuable consideration, purchased and now holds one of the ten bonds.
All of the ten bonds are outstanding, due, and unpaid, together with the interest thereon.
Daniel Lawler, who was also a trustee of the township during that year, was absent from the State of Ohio from the 20th day of August to the 12th day of September, and had no notice of the time or place of meeting of Terry and Brick, on either the 27th day of August or the 8th day of September.
Before leaving the State, however, Lawler, knowing that said business was in contemplation, expressed to Terry and Brick his willingness for them to act in the matter in his absence.
The trustees of the township have refused to make any provision for the redemption of the bonds.
The defendants resist the allowance of a peremptory mandamus for the following reasons, set forth in their answer:
*292 “ That said bonds were issued without authority of law. That they were not issued at any regular meeting of the trustees nor at their usual place of meeting, nor in pursuance of notice given to all of said trustees; but were signed by said David Terry and William Buck without notice to said Daniel Law lar.”
1. Were these bonds issued without authority of law ?
By the terms of the 16th section of the Act of March 28, 1861 (61 O. L. IT), express authority is given to township trustees, under the circumstances above stated, “to offer a bounty for volunteers, not exceeding, in any case, the sum of one hundred dollars for each, required from any such township to fill its quota under such call.” And for the purpose of paying such bounties the trustees “ may borrow the amount of money required, at any rate of interest, not exceeding six per cent., and issue bonds therefor on the faith and eredit of such township, which shall be binding and obligatory thereon.” ^
It was decided by this court in the case of Cass Township v. Dillon (16 Ohio St. 38), that this statute was not repugnant to the constitution.' And that decision is now approved.
It is true, that by the strict letter of this statute, the authority given to the trustees is “ to issue bonds for ” money borrowed to pay bounties. But as the principal object of this section (16) of the statute was to enable the trustees to create a township debt in obtaining funds to pay bounties, and to give time to raise money by taxation to redeem the debt thus made, it is certainly within the spirit, if not the letter, of the statute, to authorize the issuing of bonds to the volunteers themselves for the amount of bounties due them, as though it were in truth for money borrowed of them to pay bounties, etc.
There was, therefore, authority of law for issuing the bonds and using them in manner above stated.
2. Was it essential that the power and authority thus conferred on the trustees should be exercised at a regular meet *293 ing of the trustees, or at their usual place of meeting, or upon notice given to all the trustees?
By “ regular meeting ” is meant, no doubt, such meeting as the law requires to be held at a stated time and place. There -are only two such meetings (annually) required by law. And the business of each is specially named in the statutes, to wit: on the 1st Monday of March, at the usual place of holding elections, for the purpose of settling accounts, districting roads, etc., and on the 1st Monday of April, at the same place, for the purpose of holding an election for township officers. . That other or special meetings of the trustees are authorized, though not expressly required by law, is clear, from the fact that many duties are. enjoined upon the trustees which cannot be properly discharged at the regular meetings; for instance, affording immediate relief to the poor, removing paupers,, etc.'
Not only are the statutes silent as to the time and place for holding a special meeting of the trustees, but no previous notice is required to be given to the trustees. It therefore follows that whenever and wherever, within the township, the trustees may meet, they may proceed to transact any lawful business for the township, other than that which is required to be done at a regular meeting.
The duties authorized by sec. 16 of the act of March 28, 1864, are not required to be performed at a “ regular meeting ” of the trustees. It therefore follows that “ the offering of bounties,” and the “execution of bonds,” were properly done at a special meeting, at a place other than the usual place of meetings, and without previous notice to all the trustees.
3. Was the action of two trustees in the absence of the other legal and valid ?
By the rule of the common law, where power or authority is delegated to two or more persons to transact business of a private nature, all interested in the power must concur in its due execution. But in matters of public concern, though it is necessary for all to be present, yet the majority will conclude the minority. In this State, however, the rule of the. *294 common, law has been, abrogated in the case of township trustees. By the 7th section of the act of March 14, 1853 (S. & O. 1567), the number of trustees is fixed at “ three,” and by the 14th section it is declared that “ a majority shall be a quorum to do business at all meetings of the trustees.” Not at “ regular meetings,” or special meetings, but at ah meetings of the trustees a majority, or two, shall be a quorum. It is a perversion of this language to say that “ all meetings ” of the trustees, of which “a majority ” is a quorum, are such meetings only as are composed of the three trustees. If such were the case “ a majority ” would not be a quorum, but all would be necessary to constitute a quorum, which is a direct contradiction of the statutory provision. If such were the legislative intention the only true expression of it would be “the majority shall control the minority,” which is the common-law rule. A quorum is such a number of the members of a body as is competent to transact business in the absence of the other members.
The facts that Lawler was absent from the State and had assented to the others acting in his absence, are not regarded as elements in the power of the other two to act by themselves.
This proof, however, goes far to show the good faith of Terry and Buck in the matter, and the justice of the relator’s claim.
This opinion does not conflict in the least with the decision of this court in the case of Merchant v. North et al. (10 Ohio St. 251). In that case the judges of the district court were empowered to appoint special terms, etc., but no number less than all the judges was constituted a quorum for that purpose.

Perenyptory mandamus allowed.

Scott, CUT., and Welch, White, and Day, JL, concurred.